IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JEAN GERMAIN,

    Plaintiff,

    v.

                                 Civil Action No.:  SAG-21-2279

WILLIAM BEEMAN, *et al.*,

    Defendants.

**MEMORANDUM OPINION**

Pending in this civil rights case are defendants' motions to dismiss or for summary judgment.  ECF 16; ECF 20.  On March 2, 2022, this court issued an order granting plaintiff to and including March 29, 2022 to file an opposition response to defendants' motions to dismiss or for summary judgment.  ECF 21.  Plaintiff has not filed an opposition; rather, he has filed motions to appoint counsel, to amend complaint, and a motion for leave to conduct discovery pursuant to Fed. R. Civ. P. 56(d).  ECF 22, 23, 24.  Defendants Jane and John Doe ("dental defendants") filed a response in support of their motion to dismiss or for summary judgment.  ECF 25.

No hearing is required to resolve the matters pending.  *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, defendant Beeman's motion shall be granted, summary judgment shall be granted in favor of defendant John Doe and denied without prejudice as to defendant Jane Doe.

## I.       BACKGROUND

**A.    Complaint Allegations**

Plaintiff Jean Germain asserts that during the month of May 2021, he began suffering from a toothache he describes as excruciating.[1]  ECF 1 at 2, ¶ 9.  He submitted a sick call slip asking for

---

[1]     Germain's supplemental complaint (ECF 4) raises the same allegations against the same parties.

"immediate removal" of the tooth that was causing him pain and he was seen on May 21, 2021 by "defendants John Doe and Jane Doe." *Id*. at ¶¶ 9-11.  He states that he "begged them to remove the tooth" at this appointment.  *Id*. at ¶ 12.  Germain admits that he was advised that the tooth could not be pulled at this appointment because his gum was "severely infected," and the infection needed to be treated before the extraction occurred.  *Id*. at 3, ¶ 13.  Germain was prescribed amoxicillin and acetaminophen to treat both the infection and the pain.  *Id*. at ¶ 14.  He states that he was told at this appointment that he would be scheduled for the tooth extraction after he completed the course of medication.  *Id*.  Germain finished taking the medication in eleven days. *Id*. at ¶ 15.

Germain recalls that in the second week of June 2021, his toothache returned.  ECF 1 at 3, ¶ 16.  Germain submitted a sick call slip asking to be scheduled for an extraction of the tooth.  *Id*. at 17.

On July 30, 2021, Germain had not undergone a tooth extraction and claims he began to suffer from other severe symptoms in addition to the severe toothache.  ECF 1 at 3, ¶ 19.  He describes having a severe headache and pain all over his body but especially his lower back and penis.  *Id*. at ¶ 20.  Additionally, Germain states he developed a high fever, nausea, and profuse sweating.  *Id*. at ¶ 21.  Germain claims he began vomiting and that his condition was so severe, a correctional officer arranged for Germain to be taken to medical via wheelchair.  *Id*. at 4, ¶¶ 22-25.  Germain alleges that once he arrived, defendant Beeman "immediately began to downplay [his] symptoms."  *Id*. at ¶¶ 26-27.  According to Germain, Beeman refused to conduct a physical examination of Germain's "private area," refused to provide a COVID-19 test or a diabetes test, and refused to refer Germain to a doctor.  *Id*. at ¶ 28.  Rather, Beeman simply checked Germain's vitals and, in Germain's view, misrepresented those vital signs.  *Id*.

On August 1, 2021, two days after the alleged encounter with Beeman, Germain states his testicles began to hurt "as if they were being continually crushed."  ECF 1 at 4, ¶ 32.  The pain was so severe that it disrupted Germain's sleep.  *Id*. at ¶ 33.  Germain recalls that his left testicle started to swell and "it grew very long."  *Id*. at ¶ 35.  He claims he "continued to suffer from his other medical issues and he still had no desire to eat."  *Id*. at 4-5, ¶ 36.  According to Germain, the swelling in his testicles was so painful that he was unable to walk or sleep.  *Id*. at 5, ¶ 37.  Additionally, Germain recalls that he began "urinating what appeared to be pus."  *Id*. at ¶ 38.

On August 10, 2021, Germain was seen by a nurse who promised that Germain would be referred to a doctor.  ECF 1 at 5, ¶¶ 39, 40.  Despite that promise, Germain had not been seen by a doctor as of the date he wrote his complaint.  *Id*. at ¶ 41.  Germain states, however, that most of his symptoms have ceased but he continues to suffer from a severe toothache, back pain, left testicle pain and COVID 19 symptoms.  *Id*. at ¶ 42.

Germain alleges that defendants John and Jane Doe violated his Eighth Amendment rights by failing to ensure he was scheduled for a tooth extraction.  ECF 1 at 5, ¶ 45.  He claims Beeman misrepresented his vital signs and interfered with medical treatment.  *Id*. at 6, ¶ 46.  Lastly, Germain claims that Howard Cook[2] knew about his medical issues but failed to see Germain for an examination which in Germain's view amounts to deliberate indifference to a serious medical need.  *Id*. at ¶ 47.  As relief, Germain seeks a declaratory judgment and monetary damages.  *Id*. at 6, § VI.

In his amended complaint Germain adds new allegations against defendants.  ECF 8.  He claims that he complained to "the psychiatrist" that the psychiatric nurse promised to follow up with the medical department about Germain receiving a urinalysis and other lab tests because she

---

[2]      Dr. Cook is not employed by Corizon and service of the complaint has not been accepted on his behalf.  *See* ECF 16-1 at 1, n. 1.

believed the tests should have been ordered.  *Id*. at 1, ¶ 1.  He states that "[a]bout a month later" he was seen by CRNP Janet Clark who ordered tests for Germain which revealed he was suffering from acute pyelonephritis.  *Id*. at 1-2, ¶¶ 2 and 3.  According to Germain acute pyelonephritis is "the most serious of urinary tract infection" that is caused when an infection "spreads through the blood stream and enter[s] the kidneys" and carries a risk of the patient becoming septic.  *Id*. at ¶ 4.

Germain claims that when he was seen by Beeman, he was suffering from sepsis and Beeman refused to treat him.  ECF 8 at 2, ¶ 5.  This refusal, in Germain's view, led to the development of a "potentially life-threatening complication from the infection."  *Id*.  He states that he should have been hospitalized the day Beeman saw him.  *Id*.

Germain recalls that, in addition to the symptoms described in his complaint, he also lost ten pounds in ten days.[3]  ECF 8 at 2, ¶ 6.  He states that it is his belief that "the urinary tract infection was caused by the nerve and spinal cord, specifically cervical spondolysis" for which he has not received treatment.  *Id*. at ¶ 7.  Germain faults Dr. Cook for failing to treat him "for his nerve and spinal cord damage" but admits he has been given medication to fight the infection.  *Id*. at 2-3, ¶ 8.  He takes issue with the fact he has not been further tested to determine if the infection has been "completely eradicated or whether or not the delay[ed] treatment has caused any damage to [his] kidneys."  *Id*. at 3, ¶ 8.

**B.     Defendant Beeman's Response**

Beeman denies misrepresenting Germain's vital signs when he recorded them on July 30, 2021.  ECF 16-3 at 3, ¶ 5.  Beeman explains that he was the Assistant Director of Nursing at Western Correctional Institution ("WCI") and that he "may have been called to see [Germain] because [he] was the only nurse available."  *Id*.  Beeman recalls that he took Germain's vital signs

---

[3]     Germain states that "from about august 30, 2021 [sic] . . . until about august 10, 2021 [sic] . . . he lost 10 pounds."  ECF 8 at 2, ¶ 6.

and accurately recorded them in the note following Germain's visit. *Id*. Beeman also states that if he did not record a complaint in the note, the patient did not raise that complaint because he "always document[s] the patient's subjective complaints in [his] notes." *Id*. Beeman therefore infers that Germain never complained of pain in his tooth, penis, or testicles because if he had, it would have been documented. *Id*.

More specifically, Beeman states that Germain's medical records accurately reflect that on July 30, 2021, Beeman saw Germain for an unscheduled nurse visit after Beeman was called by an officer on Housing Unit 5 ("HU5") stating that Germain was "diaphoretic (sweating), nauseated, and vomiting." ECF 16-3 at 4, ¶ 6. However, when Beeman arrived at HU5, he did not observe any of the reported symptoms. *Id*. Beeman took Germain's vital signs which were as follows: temperature was 98.1, blood pressure 118/64, pulse 104, respirations 18, and pulse ox 98. *Id*. Although Germain asked Beeman to test him for diabetes and COVID, Germain had no symptoms warranting those tests as his vitals were stable and he had no symptoms. *Id*. Beeman states that if he had observed anything wrong with Germain, he would have done a full examination, but his vitals and appearance were normal. *Id*.

At the time of Germain's encounter with Beeman, the Infection Control nurses were doing COVID tests on all inmates. ECF 16-3 at 4, ¶ 7. Beeman states that by July 30, 2021, Germain would have already been tested and already received a COVID vaccination. *Id*. Since Germain had no symptoms of COVID and he had already been tested, there was no reason to perform the test again during Beeman's encounter with Germain. *Id*. Furthermore, Beeman's purpose in seeing Germain was to assess him for a claimed medical emergency and was not for providing requested tests or addressing other issues. *Id*. Additionally, as a registered nurse Beeman had no

authority to order an A1C test for diabetes as the test must be ordered by a nurse practitioner or a doctor. *Id.* at ¶ 8.

Beeman denies refusing to examine Germain to investigate complaints related to his penis or testicles and states that Germain did not mention this complaint, nor did he appear to be in pain during the July 30, 2021 visit. ECF 16-3 at 5, ¶ 9. Beeman states that Germain's heart rate and blood pressure were not elevated as would be expected if he had been in pain. *Id.* Beeman concludes that he never ignored any of Germain's medical needs of which Beeman was aware. *Id.* at 10.

**C.      Defendants John and Jane Doe's Response**

Ademola Cole, DDS provides a declaration in support of John and Jane Doe's motion to dismiss or for summary judgment. ECF 20-2. Dr. Cole is a licensed dentist who was at all times relevant to the complaint[4] employed by Correctional Dental Associates and assigned to WCI. *Id.* at 1, ¶ 2. Dr. Cole was the dentist who treated Germain on May 21, 2021. *Id.* at ¶ 3.

Dr. Cole's review of Germain's medical records, which are attached to the declaration, indicate that Germain came to the dental department complaining of a toothache in September 2020. ECF 20-2 at 3, ¶ 6. At that time, Germain was advised that he had periodontitis and that he should undergo extraction of three teeth. *Id.* Germain refused the extractions against medical advice. *Id.*

On May 19, 2021, a sick call slip was received from Germain asking for a dental visit. ECF 20-2 at ¶ 7. Two days later, Germain was seen by dental staff and complained to Dr. Cole about a toothache. *Id.* After performing an x-ray and an examination, Dr. Cole again diagnosed Germain with periodontitis and advised him he needed to be treated with antibiotics before the

---

[4]      Dr. Cole is no longer employed by Correctional Dental Associates as of May 28, 2021. ECF 20-2 at 1, ¶ 2.

tooth could be extracted.  *Id.*  Dr. Cole prescribed an antibiotic (amoxicillin) and a pain reliever (Tylenol) and Germain was scheduled for an extraction on June 29, 2021, which was timed so that the extraction would occur after Germain completed his course of antibiotics.  *Id.*  Germain did not show up for the scheduled extraction; the record indicates that Germain refused to leave his cell for the appointment.  *Id.* at 3-4, ¶¶ 7-8.

Germain's extraction was rescheduled for December 3, 2021.  ECF 20-2 at 4, ¶ 9.  On that date, Germain's tooth was removed.  *Id.*  Dr. Cole explains that the delay in rescheduling Germain for the extraction was necessitated by a "massive sick call volume" occurring at WCI at that time. *Id.* at ¶ 11.  Dr. Cole denies any allegation that the delay in rescheduling Germain's procedure was due to dental staff ignoring his complaints.  *Id.*  Rather, Dr. Cole asserts he never refused to see Germain or to provide dental care.  *Id.* at ¶ 10.  To the contrary, Dr. Cole states he evaluated Germain, prescribed medication, and scheduled Germain for a tooth extraction.  *Id.*

## II.    NON-DISPOSITIVE MOTIONS

### A.    Motion to Appoint Counsel

Germain seeks appointment of counsel citing his poverty, his imprisonment, and his lack of training in the law as grounds for his motion.  ECF 22.  A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is a discretionary one and may be considered where an indigent claimant presents exceptional circumstances.  *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982).  There is no absolute right to appointment of counsel; an indigent claimant must present "exceptional circumstances."  *See Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987).  Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it."  *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by

*Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel).  Exceptional circumstances include a litigant who "is barely able to read or write," *Whisenant* at 162, or clearly "has a colorable claim but lacks the capacity to present it," *Berry v. Gutierrez*, 587 F. Supp. 2d 717, 723 (E.D. Va. 2008).  Upon careful consideration of the motions and previous filings by Germain, the court finds that he has demonstrated the wherewithal to either articulate the legal and factual basis of his claims himself or secure meaningful assistance in doing so.  No exceptional circumstances exist that warrant the appointment of an attorney to represent Germain under § 1915(e)(1).  The motion is therefore denied.

**B.      Motion for Leave to File an Amended Complaint**

In his motion for leave to file an amended complaint, Germain states that he wants to "substitute defendant Howard Cook for Corizon and the doctor employed by them who by law are responsible to treat all inmates incarcerated within the division of correction."  ECF 23.  Pursuant to Federal Rule of Civil Procedure 15(a), "[a] party may amend its pleading once as a matter of course within 21 days after serving it, or if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  Fed. R. Civ. P. 15(a)(1).  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Rule 15 dictates that "[t]he court should freely give leave when justice so requires."  *Id*.  Where the proposed amendment to the complaint appears to be a futility, this Court has the discretion to deny leave to amend.  Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards: "[A] district court may deny leave if amending the complaint would be futile—that is, if the proposed amended

complaint fails to satisfy the requirements of the federal rules." *Katyle v. Penn Nat. Gaming, Inc*. 637 F.3d 462, 471 (4th Cir. 2011), citing *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.,* 525 F.3d 370, 376 (4th Cir. 2008).

Germain amended his complaint previously. ECF 8. The only allegation raised against Dr. Cook is that he is responsible for all medical care provided to inmates at WCI. *See* ECF 4 at 2, ¶ 5 and 6, ¶ 47. While plaintiff asserts that Dr. Cook "is aware" of his medical issues, Germain fails to state which medical issues Dr. Cook was aware of, or how he was made aware. In his first amendment, Germain claims that Dr. Cook failed to treat him for "nerve and spinal cord damage" which, in Germain's view, caused him to suffer a urinary tract infection which he admits was treated but claims no further testing was ordered to insure it was no longer an issue. ECF 8 at 2-3. Again, Germain fails to describe any direct encounter with Dr. Cook that would demonstrate that Dr. Cook was both aware of a serious medical condition and deliberately declined to render appropriate care. *See Farmer v. Brennan*, 511 U.S. 825, 834-7 (1994) (deliberate indifference to a serious medical need requires both objective evidence of a serious medical need and subjective evidence that defendants were aware of the need but failed to provide it); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017) (same); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016) (same); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (same). Additionally, liability under §1983 attaches only upon personal participation by a defendant in the constitutional violation. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Because it appears that Germain's claim against Dr. Cook centers on his asserted position as a supervisor and nothing more, the proposed amendment is a futility, and the motion shall be denied.

C.       **Motion pursuant to Fed. R. Civ. P. 56(d)**

Federal Rule of Civil Procedure 56(d) provides that:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it
> cannot present facts to justify its opposition, the court may:
>
> (1) Defer considering the motion or deny it;
> (2) Allow time to obtain affidavits or declarations or to take discovery; or
> (3) Issue any other appropriate order.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49.  However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'"  *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).  To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery.  Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f))

Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'"  *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20, 2011 U.S. Dist. LEXIS 14266, at *62 (D. Md. Feb. 14, 2011)).  "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'"  *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011), *rvs'd on other grounds*, (alteration in original) (citation omitted). A non-moving

party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

In his Rule 56(d) Motion and Affidavit Germain first seeks to depose defendant Jane Doe regarding her responsibilities for scheduling dental procedures. He claims that on May 21, 2021, Dr. Cole assessed his condition to be an emergency and prescribed pain killers and antibiotics and also ordered "an emergency plan for surgical extraction of tooth #16" within one to two weeks. ECF 24 at 2. Germain states that "[a]ccording to the defendants own note I was not first scheduled for my surgical extractions for until [sic] June 29, 2021." *Id*. at ¶ 12. Germain filed more sick call slips as his medication ran out and he claims that Jane Doe received all of the sick call slips, knew of his plight, and did not reschedule him for extraction until December 3, 2021. *Id*. at 3, ¶ 14. By deposing Jane Doe or submitting interrogatories for her to answer, Germain seeks to establish she was responsible for triaging sick call slips and for scheduling sick call appointments and surgeries. *Id*. at 1-2, ¶ 4. At this time, Germain has not provided anything other than an alias for this defendant, therefore, conducting a deposition or sending interrogatories is not possible unless Germain substitutes a named dental assistant for "Jane Doe." Additionally, defendants Jane and John Doe do not identify their true names; however, it can be gleaned from the records submitted that John Doe is Dr. Ademola Cole. ECF 20-2 at 2-5. Germain will be granted leave for limited discovery to determine the identity of Jane Doe.

In order to dispute defendants' claim that he refused to attend his June 29, 2021 appointment, Germain states he needs a copy of the institutional pass list for that day "and other

documentations [sic] relating to that incident." ECF 24 at 3, ¶ 16. He further claims that a release of responsibility ("ROR") form was not generated indicating he refused the appointment which was Jane Doe's responsibility to obtain. *Id*. at ¶ 17. Germain is correct that the current record before this court does not contain an ROR showing he refused the June 29, 2021 appointment. The record reflects that Germain refused treatment in September 2020 because the plan was to extract three teeth. *See* ECF 20-2 at 11 (ROR dated Sept. 15, 2020). That form indicates that Germain had "Type III to IV Periodontitis" and advises that the refusal of treatment could result in pain, infection, swelling, and death among other things. *Id*. Germain's signature appears on the form. The absence of a similar form for June 29, 2021 is unexplained; however, the named defendants are dental and medical staff who are not responsible for retrieving inmates from their housing units to attend appointments with a provider. Whether Germain refused to attend the appointment is inconsequential to the ultimate question of what defendants knew about the status of his tooth and whether the delay in extracting Germain's tooth amounted to deliberate indifference to a serious medical need. As such, this request for discovery is denied.

Germain also claims that the "medical evidence shows" that "on September 15, 2020, [he] was seen by defendant Cole[5] for a complaint that tooth #16 needed to be extracted" and further claims that he never refused to have that tooth extracted. ECF 24 at 2, ¶ 5. Here, Germain misstates the facts already in evidence. The medical record shows that the September 15, 2020 visit concerned three other teeth (#3, #4, and #19). ECF 16-5 at 60; ECF 20-2 at 11. Germain signed a release of responsibility after declining the removal of those teeth; none of the parties involved have alleged that Germain refused to have tooth #16 removed. In any event, Germain seeks to obtain the institutional pass list for June 29, 2021 so he can refute the allegation that he refused to

---

[5]     Presumably Germain is referring to "John Doe" but he has not moved to substitute Dr. Cole as a party defendant.

attend the extraction scheduled for that date.  ECF 24 at 3, ¶ 16.  He surmises that WCI may have

been on lockdown that day, but defendants are attempting to mislead this court regarding the actual

reason he was not seen that day.  There is currently no evidence before this court to establish the

reason Germain was not brought to his dental appointment on June 29, 2021; the court will

therefore assume Germain did not intentionally miss the appointment and his request for discovery

of the pass list is denied.

Germain also seeks access to all sick call slips submitted at WCI between June 29, 2021

and December 3, 2021 to refute defendants' assertion that his extraction could not be scheduled

sooner due to massive sick call volume that occurred during that time.  ECF 24 at 4, ¶ 19.  The

intended discovery request would require defendants to submit documents that contain confidential

medical information regarding other prisoners who are not parties to this lawsuit.  Under Fed. R.

Civ. P. 26(b) discovery is limited in scope to "any nonprivileged matter that is relevant to any

party's claim . . . and proportional to the needs of the case, considering the importance of the issues

at stake in the action . . . and whether the burden or expense of the proposed discovery outweighs

its likely benefit."  Confidential medical records are privileged.  Further, Germain is free to argue

that the length of the delay was unreasonable even if there was an increase in the number of sick

calls being handled during the time he waited for the extraction.  Accordingly, his request is denied.

Next, Germain states he needs evidence from CRNP Janette Clark to show that defendants

were aware of his suffering because she referred him to dental during a sick call that occurred on

September 12, 2021.  ECF 24 at 4, ¶ 21, *see also* ECF 16-4 at 39-40.  Germain also states he needs

an affidavit from the tier officer who sent him to medical when he was seen by defendant Beeman

so that he can establish that the officer thought he needed urgent care.  ECF 24 at 5, ¶ 28.  Ms.

Clark and the tier officer are not parties to this suit, therefore discovery requests directed to their

attention is inappropriate.  *See* Fed. R. Civ. P. 26(b).  Further, neither Clark's referral nor the tier officer's lay opinion regarding Germain's condition are material to Germain's Eighth Amendment claim.  The requests are denied.

Germain also states he needs a medical expert to establish that his urinary tract infection was caused by his tooth and to refute Beeman's claim that blood pressure and heart rate are a reliable means to determine if a person is experiencing severe pain.  ECF 24 at 4-5, ¶¶ 25, 29.  The purpose of a Rule 56(d) motion is to establish the need for discovery to establish facts required to oppose a motion for summary judgment.  Obtaining an expert witness to prove a plaintiff's case is not part of the discovery process.  The request for a medical expert is denied.

Germain states that he needs access to his medical, dental, and psychiatric records to prove he suffered physical and mental harm as a result of the delay in extracting his tooth.  ECF 24 at 5, ¶ 30.  Germain does not explain why he has no access to these records independent of a separate discovery request, and the court is independently aware that state inmates are entitled to periodic review of their medical records.  Nor is it clear why Germain waited until this stage of the litigation to request access to those records.  This court is not inclined to order these defendants, none of whom currently work at WCI, to provide Germain with records he can obtain on his own.  *See e.g.*, Fed. R. Civ. P. 26(b)((2)(C)(i) (requiring court to limit discovery if it determines that the discovery sought can be obtained from some other source that is less burdensome).  The request is denied.

Having determined that Germain has failed to establish the need for discovery for purposes of opposing defendants' pending dispositive motions, this court is not inclined to delay deciding those motions as to defendants Beeman and John Doe.

### III.   STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original). The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from

proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

## IV.    DISCUSSION

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Hope v. Pelzer*, 536 U.S. 730, 737 (2002); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016).  "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *accord Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017).  To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson*, 877 F.3d at 543.

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834-7 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).  Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).  "A 'serious medical need' is 'one that has been diagnosed by a physician

as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 210 (4th Cir. 2017) (quoting *Iko*, 535 F.3d at 241); *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016) (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need).

After a serious medical need is established, a successful Eighth Amendment claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious medical condition. *See Farmer*, 511 U.S. at 839-40.  Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'" *Anderson v. Kingsley*, 877 F.3d 539, 545 (4th Cir. 2017) (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk.").  "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).  The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto v. Stansberry*, 841 F.3d 219, 226 (4th Cir. 2016) (quoting *Farmer*, 511 U.S. at 842).

Germain's claim against John Doe, or Dr. Cole, does not withstand scrutiny under the well-established Eighth Amendment law.  Dr. Cole examined Germain, identified an infection in his

17

mouth, prescribed antibiotics and Tylenol, and made a plan for extraction of the tooth at a later date, after Germain was finished with the course of antibiotics and it was safe for the tooth to be extracted.  One week later, Dr. Cole left his employment with Correctional Dental Associates. ECF 20-2 at 2, ¶ 2.  Clearly Dr. Cole's actions do not amount to a callous disregard for Germain's condition.  Equally as clear is the fact that Dr. Cole no longer had any authority to schedule Germain's extraction after the first scheduled appointment was missed.  None of the delay that occurred after June 29, 2021 can be attributed to Dr. Cole, therefore he is entitled to summary judgment in his favor.

Germain's claim against William Beeman also fails.  Germain's disagreement with Beeman's assertion that an absence of an elevated heart rate and blood pressure generally means the patient is not in pain is not a basis for finding that Beeman was deliberately indifferent to a serious medical need.  Further, a correctional officer's observation of Germain and conclusion that he needed urgent medical care does not impute the requisite subjective knowledge to Beeman, a trained registered nurse.  Without evidence that medical staff linked symptoms with the presence of a serious medical condition, the subjective knowledge required for Eighth Amendment liability is not present.  *Johnson v. Quinones*, 145 F.3d 164, 169 (4th Cir. 1998).  Beeman's examination of Germain was not so grossly incompetent or inadequate as to shock the conscience or to be intolerable to fundamental fairness.  *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer v. Brennan,* 511 U.S. 825, 837 (1994), *aff'd in pertinent part by Sharpe v. S.C. Dep't of Corr.,* 621 F. App'x 732 (4th Cir. 2015); *see also Young v. Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001).  Summary judgment is also granted in favor of defendant Beeman.

Germain's claims against defendant Jane Doe survive scrutiny under both Rule 12(b)(6) and Rule 56.  Germain has asserted that this defendant was responsible for the six-month delay in rescheduling the extraction of his tooth.  Jane Doe has not been identified but a dispositive motion has been filed on her behalf.  There is nothing in the record before the court refuting Germain's claims against Jane Doe; rather, the only explanation provided for the delay in treatment is an increase in sick calls over that period of time.  There is nothing in the record disputing Germain's allegation that Jane Doe was aware that he was suffering but did nothing to have him rescheduled for the extraction sooner.  The dispositive motion filed on Jane Doe's behalf shall be denied without prejudice while Germain is granted leave to conduct *limited* discovery to determine Jane Doe's identity.  Once her identity is established by current counsel for Jane Doe, Germain will be granted leave to amend his complaint to name her as a defendant and she will be required to respond to the allegations against her.

## V.    CONCLUSION

By separate order which follows, Germain's motions to appoint counsel and, to amend complaint, are denied without prejudice; Germain's motion to conduct discovery is granted in part and denied in part as herein stated; summary judgment is granted as to defendants Beeman and John Doe (a.k.a. Dr. Ademola Cole); and summary judgment is denied as to defendant Jane Doe.


April 7, 2022                                              _____/s/_____
Date                                                       Stephanie A. Gallagher
                                                           United States District Judge