IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JEAN GERMAIN, | |
| Plaintiff, | |
| v. | Civil Action No.:  SAG-21-2279 |
| KELLY NATALE, | |
| Defendant. | |

**MEMORANDUM OPINION**

Defendant Kelly Natale filed a motion to dismiss or for summary judgment (ECF 35) in response to this civil rights complaint.  Self-represented plaintiff Jean Germain has filed motions to appoint counsel (ECF 38) and for discovery pursuant to Fed. R. Civ. P. 56(d) (ECF 39) in response to Natale's motion.  The issues have been fully briefed and are ripe for this court's review.  No hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2021).  For the reasons stated below, the court now GRANTS defendant's motion, construed as one for summary judgment, and DENIES Germain's motions.

**I.     BACKGROUND**

**A.     Procedural history**

In this court's memorandum opinion issued on April 7, 2022, summary judgment was granted as to defendants William Beeman and John Doe, subsequently identified as Dr. Cole, on Germain's Eighth Amendment claims against them.  ECF 26 at 17-18; ECF 27.  Germain also raised claims against "Jane Doe" who was identified by plaintiff as the person responsible for a six-month scheduling delay in having a tooth extracted.  ECF 26 at 19.  This court explained:

> Germain's claims against defendant Jane Doe survive scrutiny under both Rule 12(b)(6) and Rule 56. Germain has asserted that this defendant was responsible for the six-month delay in rescheduling the extraction of his tooth. Jane Doe has not been identified but a dispositive motion has been filed on her behalf. There is nothing in the record before the court refuting Germain's claims against Jane Doe; rather, the only explanation provided for the delay in treatment is an increase in sick calls over that period of time. There is nothing in the record disputing Germain's allegation that Jane Doe was aware that he was suffering but did nothing to have him rescheduled for the extraction sooner. The dispositive motion filed on Jane Doe's behalf shall be denied without prejudice while Germain is granted leave to conduct *limited* discovery to determine Jane Doe's identity. Once her identity is established by current counsel for Jane Doe, Germain will be granted leave to amend his complaint to name her as a defendant and she will be required to respond to the allegations against her.

ECF 26 at 19 (Mem Op.) (emphasis in original). Jane Doe has now been identified as Kelly Natale, who has filed the pending motion to dismiss or for summary judgment. ECF 35.

**B.     Complaint allegations**

Germain's claim against Natale concerns a six-month delay in rescheduling him for extraction of a tooth, referenced as "#16" in dental records. The claim regarding his dental care was summarized by this Court as follows:

> . . . Germain asserts that during the month of May 2021, he began suffering from a toothache he describes as excruciating. ECF 1 at 2, ¶ 9. He submitted a sick call slip asking for "immediate removal" of the tooth that was causing him pain and he was seen on May 21, 2021 by "defendants John Doe and Jane Doe." *Id*. at ¶¶ 9-11. He states that he "begged them to remove the tooth" at this appointment. *Id*. at ¶ 12. Germain admits that he was advised that the tooth could not be pulled at this appointment because his gum was "severely infected," and the infection needed to be treated before the extraction occurred. *Id*. at 3, ¶ 13. Germain was prescribed amoxicillin and acetaminophen to treat both the infection and the pain. *Id*. at ¶ 14. He states that he was told at this appointment that he would be scheduled for the tooth extraction after he completed the course of medication. *Id*. Germain finished taking the medication in eleven days. *Id*. at ¶ 15.
>
> Germain recalls that in the second week of June 2021, his toothache returned. ECF 1 at 3, ¶ 16. Germain submitted a sick call slip asking to be scheduled for an extraction of the tooth. *Id*. at 17.

ECF 26 at 1-2. Germain was scheduled to have his tooth extracted on June 29, 2021, but he did not make it to his appointment. The extraction was rescheduled and occurred on December 3, 2021.

### C.   Defendants' response

Medical records introduced by defendants in connection with the first motion to dismiss or for summary judgment (ECF 20), established the following facts:

> Ademola Cole, DDS provides a declaration in support of John and Jane Doe's motion to dismiss or for summary judgment. ECF 20-2. Dr. Cole is a licensed dentist who was at all times relevant to the complaint employed by Correctional Dental Associates and assigned to WCI. *Id*. at 1, ¶ 2. Dr. Cole was the dentist who treated Germain on May 21, 2021. *Id*. at ¶ 3.
>
> Dr. Cole's review of Germain's medical records, which are attached to the declaration, indicate that Germain came to the dental department complaining of a toothache in September 2020. ECF 20-2 at 3, ¶ 6. At that time, Germain was advised that he had periodontitis and that he should undergo extraction of three teeth. *Id*. Germain refused the extractions against medical advice. *Id*.
>
> On May 19, 2021, a sick call slip was received from Germain asking for a dental visit. ECF 20-2 at ¶ 7. Two days later, Germain was seen by dental staff and complained to Dr. Cole about a toothache. *Id*. After performing an x-ray and an examination, Dr. Cole again diagnosed Germain with periodontitis and advised him he needed to be treated with antibiotics before the tooth could be extracted. *Id*. Dr. Cole prescribed an antibiotic (amoxicillin) and a pain reliever (Tylenol) and Germain was scheduled for an extraction on June 29, 2021, which was timed so that the extraction would occur after Germain completed his course of antibiotics. *Id*. Germain did not show up for the scheduled extraction; the record indicates that Germain refused to leave his cell for the appointment. *Id*. at 3-4, ¶¶ 7-8.
>
> Germain's extraction was rescheduled for December 3, 2021. ECF 20-2 at 4, ¶ 9. On that date, Germain's tooth was removed. *Id*. Dr. Cole explains that the delay in rescheduling Germain for the extraction was necessitated by a "massive sick call volume" occurring at WCI at that time. *Id*. at ¶ 11. Dr. Cole denies any allegation that the delay in rescheduling Germain's procedure was due to dental staff ignoring his complaints. *Id*. Rather, Dr. Cole asserts he never refused to see Germain or to provide dental care. *Id*. at ¶ 10. To the contrary, Dr. Cole states he evaluated Germain, prescribed medication, and scheduled Germain for a tooth extraction. *Id*.

ECF 26 at 6-7.

Natale has submitted her declaration along with Germain's pertinent dental records in support of the pending motion to dismiss or for summary judgment. ECF 35-2. Natale states that she was employed[1] by Correctional Dental Associates as the lead dental assistant at Western Correctional Institution ("WCI"). *Id*. at 2, ¶ 2. Natale states that her duties as lead dental assistant included assisting dentists with their treatment of dental patients, ordering supplies, and triaging and scheduling dental appointments at WCI. *Id*. at ¶ 3. Her duties did not include: "selecting or recommending a patient's course of treatment or medication, alerting patients to any scheduled appointments, or retrieving a patient from their housing units to attend appointments." *Id*.

According to Natale, when inmates at WCI submit a sick call slip, it is first triaged by the medical department before it is sent to the dental department. ECF 35-2 at 3, ¶ 6. When the dental-related sick call slips are received, the appointment requests are added to one of three queues: sick calls, tooth extractions, and tooth restorations. *Id*. Natale explains that "all dental sick calls must be scheduled before tooth extraction and restoration appointments can be made." *Id*. at 4, ¶ 6. Patients are notified of their appointments by security staff; Natale states she had no role in notifying inmates of scheduled appointments. *Id*.

Natale, who certifies that the medical records submitted were prepared at or near the time of the events recorded, explains Germain's relevant dental history as documented in the records. ECF 35-2 at 3, ¶ 4. She states that Germain reported to the dental department with complaints of a toothache in September 2020. *Id*. at 4, ¶ 8. At that time, Germain was told he had periodontitis and it was recommended he should have three teeth pulled. *Id*. Germain refused the extractions against medical advice. *Id*.

---

[1] As of February 2022, Natale no longer works for Correctional Dental Associates. ECF 35-2 at 2, ¶ 2.

On May 19, 2021, Germain submitted a sick call slip for a dental visit which was received on May 21, 2021. ECF 35-2 at 4, ¶ 9. Germain was again diagnosed with periodontitis, and he was told he needed to be treated with antibiotics before the tooth he was complaining about (#16) could be extracted. *Id*. He was prescribed amoxicillin for the infection and Tylenol for the pain. *Id*. At the request of the dentist, Natale put Germain's name in the queue for a tooth extraction. *Id*. Germain was scheduled for the extraction on June 29, 2021. *Id*. Germain did not come to the appointment. *Id*. at 5, ¶ 10.

Natale states that she added Germain back to the queue for tooth extraction after he missed his June 29, 2021 appointment. ECF 35-2 at 5, ¶ 11. However, due to a "massive sick call volume" at WCI, Germain did not receive an appointment for his tooth to be extracted until December 2, 2021. *Id*., *see also* ECF 35-2 at 13 (Summary Report). On December 2, 2021, Germain's tooth was removed. *Id*.

Natale denies refusing to schedule Germain for a tooth extraction and denies that the delay was deliberate or due to anything other than an unforeseen increase in sick call volume. ECF 35-2 at 5, ¶¶ 12-13. Natale adds that between May 19, 2021 and December 2, 2021, she did not receive any dental-related sick call slips from Germain. *Id*. at ¶ 14. She states that had she received a sick call slip from Germain, she would have added it to the appropriate queue. *Id*.

D.   **Germain's Response**

Germain asserts that he requires discovery in order to respond to Natale's motion. ECF 39. He explains that Natale was required by the Sick Call Manual, applicable to all inmates in the custody of the Department of Public Safety and Correctional Services ("DPSCS"), to "ascertain from the custody staff a reason for [his] failure to appear" for his tooth extraction. *Id*. at 2, ¶ 3. In his view, this would be accomplished by having custody transport him to the dental office so that

he could sign a release of responsibility form ("ROR").  *Id*.  He states that his dental records should contain a signed ROR and he should have access to that document through discovery.  *Id.*  Germain claims that this document would prove he missed his June appointment through no fault of his own.  *Id.*  He explains that if he missed his appointment through no fault of his own, he was entitled to have the appointment rescheduled automatically.  *Id*. at 3.  Notwithstanding his claim that this document is vital to his opposition, Germain has never offered any description of the reason he missed the appointment in June.  *Id*.

Germain disputes that the dental department used a queue system as well as Natale's assertion that he was not rescheduled for his tooth extraction until December 2, 2021, because there was a massive volume of sick call slips submitted. ECF 39 at 3-5.  First, he claims that the queue system described by Natale appears to be contrary to the policy in place at WCI for handling sick calls.  *Id*. at 3, ¶ 4.  That policy requires "sick calls for each discipline [to have] a fixed time schedule."  *Id*. (brackets in original).  In Germain's view, Natale did not provide any evidence that the queue system existed and states he requires discovery to prove the delay in scheduling was not due to any queue system.  *Id*. at 3-4.  Germain has mischaracterized the use of a queue system as being offered as an excuse for the delay in rescheduling his extraction.  The queue system described by Natale is simply an explanation of how dental appointments are scheduled; nothing in the manual Germain submits as an exhibit prohibits the use of a triage system "consistent with licensing and certification requirements." ECF 39-1 at 3.  The manual simply directs that a triage system be developed by medical, mental health, and dental providers.  The queue system is what the dental provider developed, according to Natale who was in charge of implementing that system. Discovery of a written policy implementing the queue system is not warranted.

Secondly, Germain disputes the "massive sick call volume" as a valid reason for the delay in rescheduling his tooth extraction. ECF 39 at 4-5. He states that "medical evidence indicates that [he] continued to receive treatment and was seen by the medical department as well as by the psychiatry department on numerous occasions." *Id*. at 4. He cites to a June 24, 2021 sick call request to use the toenail clipper which was fulfilled on July 8, 2021. *Id*. He states he was also seen on October 22, 2021 for "dietary physical" and continued to be seen and evaluated by medical providers for "other issues." *Id*. Germain adds that on July 2, 2021, he was scheduled to be seen by the psychiatrist but could not be seen due to WCI being on lock-down. *Id*. at 5. The psychiatrist promised to have him rescheduled within four weeks with a target date between July 30 through August 5, 2021.[2] *Id*. He states he was also seen by Dr. Ashai on August 4 and September 9, 2021. *Id*. Germain observes that if the situation was different for the dental department, Natale needs to present evidence to prove that claim. *Id*. Germain does not suggest that discovery is needed to dispute Natale's claim regarding whether he submitted sick call slips seeking a tooth extraction.

Lastly, Germain states that he requires access to his dental records so that he can establish that Natale did in fact receive dental sick call slips from him prior to December 2, 2021 and therefore, was well aware that he was suffering. ECF 39 at 5. He states that he submitted a dental-related sick call request on June 24, 2021; and submitted a sick call request on August 2, 2021, that included a complaint about dental issues. *Id*. Germain also notes that on September 12, 2021, RNP Clark "was concerned enough about [his] dental issues that . . . she noted in [his] medical chart that she 'will send inquiry to dental for follow up.'" *Id*.

---

[2]     Germain believes that the practice of the mental health unit in providing target dates for rescheduled appointments somehow refutes Natale's assertions that the dental department used a queue system. ECF 39 at 3. Based on the Sick Call Manual Germain submitted, however, there is no basis to conclude that use of one triage system by a department means that a different department must use the same triage system. *See* ECF 39-1 at 3.

7

Germain's June 24, 2021 sick call request regarding his need for tooth extraction appears to be the impetus behind scheduling him for the extraction on June 29, 2021. *See* ECF 39-1 at 11. Germain's request to use toenail clippers which was submitted on June 24, 2021, does not involve the same level of care required for a tooth extraction or other medical procedure. *Id*. at 12-13.

On July 30, 2021, an unscheduled visit was generated by Germain's complaints that he was vomiting and sweating profusely (diaphoretic), but when he was examined, he was not observed to be suffering from either condition. ECF 39-1 at 15. Rather, Germain asked to be tested for diabetes and COVID when he arrived in the medical unit. *Id*.

On August 4, 2021, Germain was seen by Dr. Ashai, a psychiatrist, for review of his medications. ECF 39-1 at 17. Dr. Ashai noted that Germain was frustrated about not being scheduled for an appointment with a medical provider because he was worried about what was wrong with him physically. *Id*. There is no indication that Germain expressed concern about his tooth at that time. *Id*.

On August 10, 2021, Germain was seen for a scheduled "Nurse Sick Call" for his complaint of pain in his testicles. ECF 39-1 at 20-21. At that time Germain complained about nausea and vomiting as well as painful testicles. *Id*. at 20. He revealed he was experiencing a loss of appetite and "also dental issue." *Id*.

When Germain was seen by Dr. Ashai on September 9, 2021, the only indication that Germain had a problem with his teeth is noted under "past medical/surgical history." ECF 39-1 at 23. Most of the record for this visit notes Germain's anxiety about possibly having cancer or another medical issue. *Id*. at 23, 24.

When Germain was seen on September 11, 2021, Janette Clark, NP, he reported multiple issues, including left testicular swelling and heaviness that had improved; nausea with decreased

8

appetite and weight loss; and "recurring tooth pain." ECF 39-1 at 25. Clark noted that Germain had been seen by the dentist in May 2021, when antibiotics were prescribed for Germain, and indicated she would "send inquiry to dental for follow up." *Id*. Clark ordered multiple lab tests for Germain. *Id*. at 29.

Germain was seen by Darla S. Cowden, RN, on October 28, 2021, after he requested a follow up urine test because he had a recent urinary tract infection ("UTI"). ECF 39-1 at 31. Germain told Cowden he wanted "to see a provider to make sure 'this doesn't turn into bladder cancer.'" *Id*. He also expressed concern that the infection would get into his bloodstream. *Id*. Cowden explained to Germain that he took "Cipro" for a week to treat the UTI and she described the symptoms of Sepsis, none of which Germain exhibited. *Id*.

## II.     STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact

is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original). A court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.,* 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

Defendant's motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. Motions styled in this manner implicate the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261.

Because defendant Natale filed a motion styled as a motion to dismiss, or in the alternative, for summary judgment, Germain was on notice that the court could treat the motion as one for summary judgment and rule on that basis. Accordingly, the court will review the claims against defendant Natale under the Rule 56(a) standard and will consider the exhibits filed in support of the dispositive motions.

### III.   NON-DISPOSITIVE MOTIONS

#### A.   Rule 56(d) Motion

Federal Rule of Civil Procedure 56(d) provides that:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts to justify its opposition, the court may:
>
> (1) Defer considering the motion or deny it;
> (2) Allow time to obtain affidavits or declarations or to take discovery; or
> (3) Issue any other appropriate order.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49. However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f))

Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20, 2011 U.S. Dist. LEXIS 14266, at *62 (D. Md. Feb. 14, 2011)). "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011), *rvs'd on other grounds*, (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

Germain's motion for discovery pursuant to Rule 56(d) is without merit. His request for a copy of the ROR documenting the reason for his refusal for the June 29, 2021 extraction is a document, to the extent it exists, that would not affect the outcome of this case. The pivotal issue with regard to defendant Natale is whether she deliberately failed to reschedule Germain for a tooth extraction after he missed his first appointment. This court notes that a dental record created by Dr. Graves on June 29, 2021, indicates that Germain missed his appointment without explanation and that he was rescheduled. ECF 16-5 at 38. It was not until Germain's rescheduled appointment on December 3, 2021, that Dr. Graves notes that Germain did not come to his June dental appointment because he "chose not to leave [his] cell." *Id*. at 57. Whether Germain simply declined to attend his appointment, or there was a failure by security staff to issue a medical pass, is not a material fact. Rather, the material fact here involves what was done after Germain missed

the appointment and whether there was an intentional denial of treatment for a serious medical condition.

Germain's request for discovery in connection with the triage system used by the dental department also does not impact upon a material fact. Natale has not alleged that the triage system is to blame for the delay; rather, she simply describes the method used for scheduling dental appointments.

Germain also asserts he requires discovery of his dental records so that he can establish that he sent in sick call slips regarding his toothache prior to December 3, 2021. The sick call slips he references in his motion are already in the record before this court. *See* ECF 16-4 at 61; ECF 16-5 at 1-3; ECF 39-1 at 11-12. Only one of the sick call slips Germain relies on to establish that Natale must have known he was suffering with a toothache actually focuses solely on his dental issue. ECF 39-1 at 11 (June 26, 2021 sick call). The others do not, or mention it as a secondary issue, and not the primary issue for the sick call slip. ECF 16-4 at 61 (request to use the nail clippers); ECF 16-5 at 1 (swollen scrotum); *id.* at 2 (nausea, vomiting and possible UTI, mentions dental issue but focus is on other issues), *id.* at 3 (swollen testicles). Additionally, as Germain admits, he is entitled to obtain medical and dental records through the procedure outlined in the Operations Manual for Medical Records he attaches to his motion. ECF 39-1 at 40-41, ¶ C (inmate access to medical record). Thus, discovery is not required for access to those records. For these reasons, the motion is denied.

### B. Motion to Appoint Counsel

Germain moves for appointment of counsel based on his poverty, imprisonment, and lack of training in the law as well as his assertion that he has a meritorious claim. ECF 38. A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is a discretionary one

and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). There is no absolute right to appointment of counsel; an indigent claimant must present "exceptional circumstances." *See Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987). Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it." *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel). Exceptional circumstances include a litigant who "is barely able to read or write," *Whisenant* at 162, or clearly "has a colorable claim but lacks the capacity to present it," *Berry v. Gutierrez*, 587 F. Supp. 2d 717, 723 (E.D. Va. 2008). Upon careful consideration of the motions and previous filings by plaintiff, the court finds that he has demonstrated the wherewithal to articulate the legal and factual basis of his claims himself. No exceptional circumstances exist that warrant the appointment of an attorney to represent Germain under § 1915(e)(1). His motion shall be denied.

### IV.   DISCUSSION

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Hope v. Pelzer*, 536 U.S. 730, 737 (2002); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *accord Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017). To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the

actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson*, 877 F.3d at 543.

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834-7 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer*, 849 F.3d at 210 (quoting *Iko*, 535 F.3d at 241); *see also Scinto*, 841 F.3d at 228 (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need).

After a serious medical need is established, a successful Eighth Amendment claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious medical condition. *See Farmer*, 511 U.S. at 839-40. Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'" *Anderson v. Kingsley*, 877 F.3d 539, 545 (4th Cir. 2017) (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness

requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S. at 842).

The need for Germain to undergo tooth extraction procedure is undisputed. The objective factor – that Germain had a serious medical need – is therefore established. The issue is whether Natale had the requisite subjective knowledge. Several factors weigh against finding Natale acted with knowledge of a substantial risk to Germain's health.

Germain was advised to have three other teeth pulled but declined, against medical advice, to undergo that procedure. *See* ECF 35-2 at 12 (ROR dated Sept. 15, 2020). Germain does not deny signing that ROR, which indicates that he has "Type III to IV Periodontitis" and that refusing the extractions may lead to "undesirable results . . . including but not limited to pain, infection, swelling, hospitalization, and death." *Id*. The ROR does not provide a "reason" for the refusal of treatment, nor is there space on the form to note a patient's rationale for refusing treatment. This history establishes that Germain was willing, on a date close in time to the extraction scheduled for June 29, 2021, to allow the condition of his teeth to deteriorate and the infection to remain unchecked. This lends credence to Natale's assertion that Germain refused his June 29, 2021 appointment without explanation and supports any decision not to seek Germain out for an

explanation. Moreover, any failure to comply with paperwork requirements for an ROR is not proof that Natale was deliberately indifferent to Germain's needs.

Germain maintains that he missed his appointment through no fault of his own, entitling him to an automatic rescheduling of the appointment. This is an apparent reference to the Sick Call Manual which requires an automatic rescheduling for sick call appointments missed for unavoidable reasons, such as being out of the prison for court. ECF 39-1 at 8-9, ¶ E(2). Even assuming that Germain's assertion that he was not automatically rescheduled is true, that factor alone is insufficient to impute knowledge that the required extraction was necessary to curtail serious pain caused by that tooth, or to avoid a more serious health issue. To the extent that Natale believed Germain simply refused to leave his cell for the June 29, 2021 appointment, she nevertheless put Germain's name back into the queue for an extraction.

The record before this court includes sick call slips sent in by Germain during the period of time between June 29, and December 3, 2021. None depict any urgency or desperation regarding his toothache, nor did they concern only dental issues. Had any of the sick call slips focused on only the issue with Germain's tooth, like the sick call slip he submitted on June 24, 2021, his request for treatment would have been directed to the dental department. While medical providers noted that they contacted dental on Germain's behalf regarding his complaints of tooth pain, there is no evidence in the record that they spoke to Natale, or that Natale was otherwise aware of the inquiry from medical staff. Nor did Germain notify the dental department that his need for a tooth extraction had become urgent. Given the foregoing, subjective knowledge of his alleged suffering cannot be attributed to Natale, who did not have access to records in the medical department.

Any mention by other medical providers Germain saw between June 29 and December 3, 2021 that they would follow-up with the dental department regarding his toothache, does not amount to proof that defendant Natale had reason to believe that Germain had a dental emergency requiring immediate attention. Even if Natale had access to Germain's medical record during the operative time period, his sick call slips do not portray any urgency regarding his toothache. To the contrary, the sick call encounters simply reference Germain's ongoing dental concerns, but do not reference that the tooth was infected or that his pain was not managed by analgesics available to him.

For these reasons, Natale is entitled to summary judgment in her favor.

A separate order granting Natale's motion to dismiss or for summary judgment and denying Germain's pending motions, follows.

August 22, 2022  
Date

_____/s/_____  
Stephanie A. Gallagher  
United States District Judge